IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUBIA PORTER,

                Plaintiff,

  v.

DENISE HURLESS and SANDRA ENDER,

                Defendants.

OPINION and ORDER

23-cv-353-jdp

---

    Plaintiff Qubia Porter, proceeding without counsel, is currently incarcerated in an Illinois prison. Porter alleges that when he was incarcerated at Jackson Correctional Institution, defendant nurses Sandra Ender and Denise Hurless refused to move him from a top-bunk assignment even though he had an injured shoulder, leading to him falling out of his bunk and injuring his other shoulder. I granted him leave to proceed on Eighth Amendment and Wisconsin-law negligence claims about defendants' failure to assign him a low bunk and for their treatment of pain in his shoulders before and after the fall.

    Porter, Ender, and Hurless each separately move for summary judgment, Dkt. 38; Dkt. 44; Dkt. 45. Porter brings federal-law Eighth Amendment claims only against defendant Ender; the undisputed facts show that defendant Ender did not consciously disregard a risk of Porter being harmed by his top-bunk assignment, nor did she disregard his shoulder pain. Rather, she followed the prison policy for low-bunk restrictions and provided Porter the medical treatment that nurses were authorized to provide. I will deny Porter's motion for summary judgment on his Eighth Amendment claims against Ender and I will grant Ender's motion for summary judgment on those claims. I will relinquish jurisdiction over Porter's state-law claims, which are the only claims asserted against Hurless.

UNDISPUTED FACTS

Both Porter's and defendant Hurless's summary judgment materials do not follow this court's procedures to be followed on summary judgment by presenting numbered proposed findings of fact including all the facts necessary to support their motions. *See* attachments to preliminary pretrial conference order, Dkt. 25, at 2–3. But these parties' other submissions supporting their own summary judgment motions and opposing the other side's motions make their versions of the facts clear enough to include below.

I granted Porter an extension of time until April 11, 2025, to submit his response to defendant Ender's summary judgment motion. Dkt. 55. Porter submitted only responses to Ender's proposed findings of fact, which the court received on April 15. Dkt. 57. Ender asks the court to disregard those proposed findings as untimely filed. *See* Dkt. 58. But Porter appears to have placed that document in the prison mail stream before his deadline, so I will not disregard those proposed findings. *See Taylor v. Brown*, 787 F.3d 851, 858–59 (7th Cir. 2015) (under "mailbox rule," prisoner submission is deemed filed with court when he gives submission to prison officials for mailing).

The following facts are undisputed unless otherwise noted.

Plaintiff Qubia Porter was incarcerated at Jackson Correctional Institution (JCI) at the times relevant to his complaint. Defendants Sandra Ender and Denise Hurless are nurses who worked at JCI. Ender was employed by the Department of Corrections. Hurless was employed by a company contracted to provide medical care at the prison.

Porter was transferred to JCI in June 2022. Inmates arriving at JCI are initially housed in the "X building," also known as the intake building, until they are assigned to another

building for the duration of their stay. This building resembles a barracks, with a row of bunk beds along the wall. Porter was assigned to a top bunk.

Low-bunk assignments are generally preferred by inmates for a variety of reasons. There is a large population of inmates who need low bunks because of their age (Porter was in his late 20s at the time of these events), medical concerns like a high body-mass index, or low mobility. Lower bunks have more privacy and are perceived as a status symbol among inmates. Because of the large demand for a low-bunk assignments, prison staff reviews requests for low-bunk restrictions using the DOC's "Medical/Dental Restrictions/Special Needs" policy. *See* Dkt. 46-3. Under that policy, nurses are authorized to temporarily assign an inmate a low bunk if the inmate has an acute injury. But for chronic medical issues, an inmate's request must be reviewed by the Special Needs Committee. *Id.* at 9.

Porter injured his left shoulder in 2017 and his shoulder continued to cause him pain. On June 29, 2022, Porter submitted a health service request stating that he was "having problems" with his left shoulder and that it was "effecting [him] getting onto the top bunk." Dkt. 46-1, at 56.

Defendant Hurless saw Porter the next day to address his medical concerns and his request for a low-bunk restriction. Hurless examined Porter using a DOC nursing protocol for musculoskeletal injuries. *See* Dkt. 46-2. She determined that he did not have full strength in his left arm but did have full range of motion. She determined that Porter did not qualify for a low-bunk restriction because his shoulder condition was a chronic one, not acute, and he did not have a mobility problem. Hurless provided Porter with ibuprofen, Tylenol, Aspercreme, and an ice bag, treatments allowed under the musculoskeletal nursing protocol. Nurses cannot

3

otherwise prescribe medication. Hurless also made a referral to an advanced-care provider for a potential injection into the arm.

Several days later, Porter submitted another health service request, this time stating that he was out of pain medication and asking how long it would be until he could see the doctor. Defendant Ender saw Porter the next day, July 4, 2022. Ender states that she followed the musculoskeletal nursing protocol. Ender noted that Porter had some decreased mobility, but not enough to warrant a low-bunk restriction. Ender asked Porter whether he was climbing out of his bed or jumping out. Porter said that there was a dispute among inmates about whether he could use a chair to get in or out of his bed. Ender told Porter that he should discuss the inmate dispute with security staff. (Porter says that when he did later raise the issue with an officer, he told him it was a medical issue). Ender told Porter that he didn't meet the criteria for a low-bunk restriction, particularly given the limited availability of low bunks; that was instead a question for the Special Needs Committee. Ender gave Porter a three-day supply of ibuprofen and Tylenol, and she noted that he already had an ice bag and Aspercreme.

Later that day, Porter attempted to climb onto the top bunk by grasping the frames of his bed and an adjacent bed and jumping; he did not make it all the way up, falling several feet onto his left shoulder. *See* Dkt. 48-2 (placeholder docket entry for surveillance video showing the accident, at 3:12 to 3:14). Staff contacted the Health Services Unit. Because Porter now had an acute injury, defendant Ender gave him a temporary low-bunk restriction until a further evaluation.

Ender saw Porter two days after the accident; Porter's stated concern was his right shoulder, which hurt because he tried to catch himself with that arm. Ender also noted that Porter had some swelling in his right shoulder blade but that there was no bruising, that he had

4

a strong grip, and that he was able to take his shirt off but complained of pain while moving. Ender's plan of care was for Porter to continue slow stretches, alternate between ice and heat to the area, and use pain medication. She stated that she would contact the advanced-care provider for a longer-term pain medication than what nurses could provide under the nursing protocols. A doctor ordered Porter a month supply of ibuprofen 400 mg and placed a referral for physical therapy.

About a week later, Porter submitted a health service request focusing on feeling popping in his right shoulder. Ender noted that his right shoulder had dropped, that he had limited movement without pain and that he struggled to move his shoulder without pain to get his shirt on with both arms. Ender told Porter to "take it easy" over the weekend and that he would need to be rechecked by medical staff. Dkt. 46-1, at 13.

Porter was seen for a follow-up several days later and also received physical therapy that day. Those appointments led to an order for an X-ray, which showed no fracture. An MRI was later ordered; the parties do not provide the results. Porter states that he suffered a torn labrum in his right shoulder.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Porter contends that defendants violated his rights in two ways: he alleges that defendants (1) failed to address the risk he faced from climbing into and out of his bunk with an injured shoulder; and (2) failed to give him proper medical care for his shoulder pain, which I take to be pain in his left shoulder before his fall and pain in both shoulders afterward. I granted Porter leave to proceed on Eighth Amendment and Wisconsin-law medical negligence

5

claims against defendant Ender and on medical negligence claims against defendant Hurless. I'll begin with Porter's Eighth Amendment claims against Ender.

## A. Eighth Amendment

### 1. Low-bunk accommodation

Porter's first Eighth Amendment claim against Ender concerns her July 4, 2022 meeting with him before his fall, in which she failed to provide him with a low-bunk restriction.

A prison official's conduct may violate the Eighth Amendment if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Courts refer to this standard as requiring "deliberate indifference" or "conscious disregard" to a risk of harm.

Porter contends that Ender knew that it was extremely difficult to climb into his bunk yet she denied him a low-bunk restriction anyway. For various medical and security reasons, prison staff can't give low bunks to anyone who asks for one. It's undisputed that Ender had the power to issue a short-term low-bunk restriction for an acute mobility-affecting injury. But the facts show that Porter's condition was chronic, dating back years; low-bunk restrictions for chronic conditions had to be approved by the special-needs committee. Even considering the factors the Special Needs Committee would have considered for a chronic condition, Porter's condition wasn't serious enough to suggest that a low-bunk restriction was necessary. There was nothing in the medical record suggesting that he had significant mobility limitations. But both Hurless and Ender treated Porter for that pain with ice, Aspercreme, and over-the-counter pain medications. Porter discussed a dispute among inmates about him being able to use a

6

chair to assist in climbing to the top bunk, and Ender appropriately told him to raise that concern with security staff. Based on this record, no reasonable jury could conclude that Ender consciously disregarded the risk of harm to Porter. I will deny Porter's motion for summary judgment on this claim and grant Ender's motion.

### 2. Medical care for pain

Porter's second Eighth Amendment claim against Ender is a medical care claim for failure to properly treat his shoulder pain both before and after his fall.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). I will assume for purposes of this opinion that Porter's pain in both shoulders was a serious medical need.

As for whether Ender consciously disregarded that need, Ender met with Porter hours before his accident and then twice shortly after the accident. Porter contends that Ender's care was deficient because she didn't change course after he told her that he was still in pain despite some treatment. Medical providers can violate the Eighth Amendment by "persist[ing] in a course of treatment known to be ineffective," *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016).

In considering medical care claims, I must consider the totality of care that Porter received, not just pick apart individual decisions. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Prisoners are not entitled to the treatment of their choice. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). And as a nurse, Ender was limited in the

7

treatment that she could directly provide. In their meeting before the accident, Ender gave Porter additional over-the-counter medication. In the days following the accident, when Porter's injury was an acute one to his other shoulder, Ender evaluated him, issued him a temporary low-bunk restriction, directed him to continue stretches and alternate ice and heat, and she contacted an advanced care provider for a longer term medication; a doctor prescribed medication and physical therapy. Then about a week later, she responded to his complaints of pain and shoulder popping by examining him, telling him to rest, and directing a follow-up appointment, which he had within several days and that led to further diagnostic care. Nothing in the totality of care provided by Ender suggests that she consciously disregarded Porter's pain. Rather, she evaluated him, provided medications that she had the authority to prescribe, and facilitated his treatment by other medical staff. I will deny Porter's motion for summary judgment on this claim and grant Ender's motion.[1]

## B. Medical negligence claims

That leaves Porter's Wisconsin-law medical negligence claims against defendants. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Porter doesn't allege any other basis for federal jurisdiction over the state-law claims. In particular, Porter expressly asserts only federal-question jurisdiction, and he hasn't otherwise shown that this court could exercise federal diversity jurisdiction over his state-law claims. He fails to allege that she and defendants are citizens of different states and nothing in

---

[1] Defendant Ender also contends that she is entitled to qualified immunity on Porter's Eighth Amendment claims against her. Because I am dismissing those claims on the merits, I need not consider Ender's qualified immunity argument.

the record suggests that they are; although he is currently incarcerated in an Illinois prison, he lists his current address as one in Baraboo, Wisconsin.

Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Porter's state-law claims. I will decline to exercise subject matter jurisdiction over these claims.

Porter may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Plaintiff Qubia Porter's motion for summary judgment, Dkt. 44, is DENIED with respect to his Eighth Amendment claims.

2. Defendant Sandra Ender's motion for summary judgment, Dkt. 45, is GRANTED with respect to plaintiff's Eighth Amendment claims.

3. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. Defendant Denise Hurless's motion for summary judgment, Dkt. 38, is DENIED as moot.

5. The clerk of court is directed to enter judgment accordingly and close this case.

Entered April 21, 2025.

                                  BY THE COURT:

                                  /s/

                                  _____

                                  JAMES D. PETERSON
                                  District Judge